**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles SCHRADER, Defendant–**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lisa HIGH WOLF, Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Clayton HIGH WOLF, Defendant–**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Shaun KEITH, Defendant–Appellant.**

Nos. 92–3727, 92–3728, 92–
3936 and 92–3939.

United States Court of Appeals,
Eighth Circuit.

Submitted May 12, 1993.

Decided Dec. 6, 1993.

Scott D. McGregor, Rapid City, SD, argued, for Charles Schrader.

James R. Wefso, Rapid City, SD, argued, for Lisa High Wolf.

Robert M. Nash, Rapid City, SD, argued, for Clayton High Wolf.

Jerry Matthews, Hay Springs, NE, for Shaun Keith.

Diana J. Ryan, Rapid City, SD, argued, for U.S.

Before BEAM, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

LOKEN, Circuit Judge.

Charles Schrader, Lisa High Wolf, Clayton High Wolf, and Shaun Keith appeal their convictions for violating 18 U.S.C. § 111, which punishes any person who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" federal officers engaged in the performance of official duties. We reverse the convictions because the district court erred in instructing the jury that the adverb "forcibly" modifies only the verb "assaults," and not the other offense-defining verbs in the statute. We further conclude that the tribal officers in question were federal officers for purposes of § 111, reject defendants' other contentions on appeal, and remand the case for a new trial.

## I. Sufficiency of the Evidence.

To determine if the trial evidence was sufficient to convict, we must review that evidence in the light most favorable to the government. *See United States v. LaChapelle*, 969 F.2d 632, 633 n. 1 (8th Cir.1992). At 5:00 in the morning, Oglala Sioux tribal officers Richard Greenwald and John Long

responded to the report of a disturbance at the Waln residence on the Pine Ridge Indian Reservation. A man and woman with visible injuries claimed they were attacked and beaten in their home by defendants, who had departed. Minutes later, the officers received word of another nearby disturbance. They investigated and found defendants in a yard near their parked car. Residents reported that defendants had just broken into the house and attacked its occupants.

Officer Greenwald told Clayton High Wolf that he was under arrest and attempted to handcuff him. High Wolf struggled, but Officer Greenwald succeeded in handcuffing him and pushed him into the back seat of the police car. Meanwhile, Officer Long told Shaun Keith that he was under arrest. When Keith attempted to flee, Officer Long held him. After placing Clayton High Wolf in the police car, Officer Greenwald came to assist in handcuffing Keith. At this point, Lisa High Wolf opened the back door of the police car where Clayton was seated, and Clayton began to get out. Officer Long released his hold on Keith, went to the police car and closed the rear door, and then returned to help Officer Greenwald pin Keith against defendants' car.

Lisa High Wolf now started defendants' car and, ignoring a command from Officer Greenwald, began to drive forward. The officers pulled Keith back and away from the car. Charles Schrader emerged from the car, pulled off his jacket, and started towards the officers. Officer Long released his grip on Keith and turned to face Schrader. Keith broke free and fled. Officer Greenwald pursued Keith on foot. Keith turned and screamed, "I am going to kill you. You fuckers are dead," and reached into his jacket as if to draw a weapon. When Officer Greenwald drew his revolver, Keith turned and ran away. Schrader got back into the car, and Lisa High Wolf drove away.

Two hours later, tribal police received a report that a man with a firearm had entered the High Wolf home. Police arrived and found Lisa High Wolf and Charles Schrader asleep in the basement. When told he was under arrest, Schrader struggled until the officers brandished a shotgun and told him to remain still. Lisa High Wolf was verbally abusive but submitted to arrest.

■ Defendants argue that this evidence was insufficient to convict them of violating § 111. We disagree. Force is a necessary element of any § 111 violation. However, that element may be satisfied by proof of actual physical contact, or by proof of "such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death." *United States v. Walker*, 835 F.2d 983, 987 (2d Cir.1987). Under the relevant sufficiency standard— whether there was evidence from which the jury could rationally have found each defendant guilty beyond a reasonable doubt, *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)—we conclude that there was sufficient evidence to convict each defendant of forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with the tribal officers, or of aiding and abetting such a violation.

## II. The "Forcibly" Instruction.

■ Although there was sufficient evidence to convict, we agree with defendants that their convictions must be reversed because the district court erred in construing the word "forcibly" in § 111. The court discussed this issue at length during the jury instructions conference, first with defense counsel:

MR. MATTHEWS [Counsel for Keith]: In my proposed [instructions] I proposed a definition for the term "forcibly assaults" and then also "forcibly" in the next instruction.

THE COURT: Is it your position that under the statute the word "forcibly" describes all of the other acts set forth in the statute, that is, forcibly assaults, forcibly resisted, forcibly opposed, forcibly impeded, forcibly intimidated, forcibly interfered?

MR. MATTHEWS: Yes, Your Honor, it is.

THE COURT: Do you have any authority for that?

MR. MATTHEWS: *Long v. U.S.* [199 F.2d 717 (4th Cir.1952)];

and then with the prosecutor:

THE COURT: ... So tell me why, again, why that word "forcibly" should follow the definition of "assault"?

MS. RYAN [the prosecutor]: Because that is where the definition of forcibly applies is in the forcible assault.

THE COURT: It's your position that the word "forcibly" is not subsumed to describe the other acts which are included in the statute, correct?

MS. RYAN: Yes, Your Honor.

 ＊ ＊ ＊ ＊ ＊ ＊

THE COURT: Your point is that "forcibly" applies only to the assault?

MS. RYAN: Right.

The court unequivocally adopted the prosecutor's position:

THE COURT: In case there should be some misunderstanding of that, I believe the statute is clear that you can forcibly assault, but you do not have to forcibly resist, or forcibly oppose, or impede, intimidate or interfere in order to violate the statute.

Over defense objections, the district court then charged the jury that an element of the crime was, "That a defendant forcibly assaulted, or resisted, or opposed, or impeded, or intimidated or interfered with Richard Greenwald or John Long."

This charge was ambiguous and, standing alone, might have obscured the issue that counsel had debated at the instruction conference. However, the prosecutor clarified the district court's interpretation of the statute when she stated at the outset of her closing argument:

The forcibly-forcible element goes only to the assault charge here. There is no requirement that the government prove that the resisting, opposing, intimidating, interfering, or impeding were forcible. Although we have evidence that there was

forcible resisting and other forcible interference, we don't have to prove the element of force on those issues, but we do have to prove that element on the assault.

The district court's interpretation of the statute conflicts with our decision in *United States v. Camp*, 541 F.2d 737 (8th Cir.1976). In *Camp*, defendant was convicted under an indictment charging that he "wilfully, knowingly, and unlawfully resisted, opposed, impeded, intimidated and interfered with" a postal inspector. Though assault was not charged, we reversed the conviction because "[t]he word 'forcibly' does not appear in the indictment, nor does any word with a similar import." 541 F.2d at 740. Likewise, in *Long v. United States*, 199 F.2d at 719, which we cited favorably in *Camp*, the court compared the text of § 111 with the text of its predecessor statute and concluded that "the adverb 'forcibly' was intended to modify each of the verbs which succeeded it." *See also Ladner v. United States*, 358 U.S. 169, 176 & n. 4, 79 S.Ct. 209, 213 & n. 4, 3 L.Ed.2d 199 (1958); *United States v. Bamberger*, 452 F.2d 696, 699 (2d Cir.1971), *cert. denied*, 405 U.S. 1043, 92 S.Ct. 1326, 31 L.Ed.2d 585 (1972).

The government contends that this error was harmless, like the conflicting or confusing instructions on the issue of intent under § 111 in *United States v. Sanchez*, 914 F.2d 1355, 1359 (9th Cir.1990), *cert. denied*, 499 U.S. 978, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991). However, the element of force was a crucial issue in this case.[1] Although there was some evidence of an assault by each defendant, their actions could much more readily be characterized as "resisting, opposing, impeding, intimidating, or interfering with" the tribal officers. Shaun Keith admitted that he ran from the officers when they tried to apprehend him. Lisa High Wolf admitted that she opened the back door of the police car where her brother was seated and later drove away from the scene with Schrader. Clayton High Wolf admitted that he pushed his hand down when Officer Greenwald tried to handcuff him. Each de-

---

1. In *United States v. Voss*, 787 F.2d 393, 398 (8th Cir.), *cert. denied*, 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986), we questioned whether an instruction permitting the jury to convict without properly finding each element of the crime may ever be harmless error. Given the facts of this case, we need not address that issue.

fendant put an innocent gloss on his or her conduct. But with the element of force eliminated, the jury could have believed the defendants' explanations and still have convicted them because they non-forcibly impeded or resisted the tribal officers.

"Whether a person has opposed the efforts of federal agents with sufficient force to [violate § 111] can thus be a troublesome question of degree." *United States v. Cunningham*, 509 F.2d 961, 963 (D.C.Cir.1975). Defendants contended that their confrontational conduct was so minimal as to be outside the scope of § 111. Consistent with the district court's prior ruling, the prosecutor told the jury that non-forcible resisting, opposing, impeding, intimidating, or interfering violated § 111. Viewed in the context of the entire trial, we conclude that the district court's instruction as explained in the prosecutor's closing argument did not "adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government." *United States v. Bishop*, 825 F.2d 1278, 1283 (8th Cir.1987) (citation omitted). Accordingly, the convictions must be reversed.

### III. The Federal Officer Issue.

Following a hearing, the district court denied defendants' pretrial motion to dismiss on the ground that tribal officers Greenwald and Long were not federal officers performing official duties for purposes of § 111. Defendants appeal that ruling.

Section 111 proscribes forcible action against "any person designated in [18 U.S.C. § ] 1114." Section 1114 lists many categories of federal officers, including "any officer or employee of the ... Department of the Interior ... assigned to perform investigative, inspection, or law enforcement functions." Prior to 1976, the Department of Interior's Bureau of Indian Affairs ("BIA") was the primary provider of law enforcement services on the Pine Ridge Reservation. That year, acting pursuant to the Indian Self-Determination Act of 1975, BIA entered into a contract under which the Oglala Sioux Tribe Public Safety Commission ("OSTPSC") agreed "to provide the entire gamut of law Enforcement Services" on the Reservation, including the arrest of "violators of Tribal Penal Code provisions, Federal and State law." *See* 25 U.S.C. § 450f. Agreements of this type are commonly known as "638 contracts," named for the public law number of the 1975 Act. Officers Greenwald and Long are employed by OSTPSC at the Pine Ridge Reservation. They have been designated by BIA to carry out OSTPSC's responsibilities under the 638 contract.

In 1990, Congress passed the Indian Law Enforcement Reform Act, 25 U.S.C. §§ 2801–2809, "to clarify and strengthen the authority of the law enforcement personnel and functions within the [BIA]." S.Rep. No. 167, 101st Cong., 2d Sess. 4 (1990), *reprinted in* 1990 U.S.C.C.A.N. 712, 712. Under that Act, the Secretary of Interior may charge BIA employees with a broad range of law enforcement powers. *See* 25 U.S.C. § 2803. In addition, the Secretary may contract with a tribe to assist BIA in enforcing tribal laws and, in connection with such a contract, may authorize a tribal law enforcement officer "to perform any activity the Secretary may authorize under section 2803." 25 U.S.C. § 2804(a). When acting under such authority, "a person who is not otherwise a Federal employee shall be considered to be an employee of the Department of the Interior only for purposes of ... sections 111 and 1114 of Title 18." 25 U.S.C. § 2804(f).

 The government argues, and the district court held, that under 25 U.S.C. § 2804(f) tribal officers Greenwald and Long were federal officers for purposes of § 111 when they encountered defendants because they were engaged in law enforcement activities and were acting pursuant to a 638 contract that delegated BIA's tribal law enforcement duties to OSTPSC. We agree. When a 638 contract meets the definition of a § 2804(a) agreement, and when tribal officers designated under that contract enforce laws that BIA officers would otherwise enforce, § 2804(f) expressly provides that those tribal officers are afforded the same protection under 18 U.S.C. § 111 that Congress has afforded BIA employees. This is so regardless of whether the officer is enforcing a tribal, state, or federal law, so long as he is engaged in the performance of his official

duties rather than "a personal frolic of his own." *United States v. Heliczer,* 373 F.2d 241, 245 (2d Cir.), *cert. denied,* 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967). That is the plain meaning of § 2804(f). It is also consistent with the purpose of § 111 "to protect *both* federal officers and federal functions." *United States v. Feola,* 420 U.S. 671, 679, 95 S.Ct. 1255, 1261, 43 L.Ed.2d 541 (1975) (emphasis in original). Therefore, the district court properly denied defendants' pretrial motion to dismiss.

### IV. Additional Issues.

Because defendants may be retried, we will briefly address three additional issues they have raised on appeal.

■ *A. Prior Acts Evidence.* Over defense objections, officers Greenwald and Long testified regarding their response to the reported disturbance at the Waln home prior to their encounter with defendants. The district court ruled that this testimony was relevant to defendants' state of mind and to the question whether the officers were performing their official duties when they encountered defendants, and that it was admissible "res gestae" evidence of the facts and circumstances surrounding the offenses charged. Immediately following each officer's testimony, the trial court cautioned the jury regarding the limited purposes for which this evidence was being admitted. In closing argument, the prosecutor briefly summarized the officers' visit to the Waln residence but also reminded the jury that the defendants were not being tried for these events. The court overruled defense objections to this portion of the closing argument.

These rulings were not an abuse of the district court's discretion. *See United States v. Ball,* 868 F.2d 984, 987 (8th Cir.1989), for the relevant standard of review. As the district court noted, events at the Waln home were relevant to two elements of the § 111 offenses charged, defendants' state of mind and whether the officers were engaged in official duties. Defendants' broadside attack on the "res gestae" doctrine, based upon our

discussion in *United States v. Elem,* 845 F.2d 170, 173–74 (8th Cir.1988), is misplaced—the district court admitted this evidence to explain the circumstances surrounding the crime charged, a practice that we have repeatedly approved. *See, e.g., United States v. Harris,* 956 F.2d 177, 180 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 85, 121 L.Ed.2d 48 (1992).

Any undue prejudicial effect of this testimony was eliminated by the district court's repeated caution that the jury should only consider it for limited purposes. In these circumstances, the prosecutor's limited reference to this background evidence in her closing argument was not improper or unduly prejudicial, and there was no abuse of discretion in overruling defense objections without yet another cautionary instruction to the jury.

■ *B. Schrader's Prior Convictions.* At the close of the government's case, Schrader moved to preclude the prosecutor from using Schrader's two prior felony convictions to impeach his trial testimony. The district court replied, "At the present time I will deny the motion, but we will talk about it when I see what the offer is going to be." After hearing other defendants testify, the court advised counsel for Schrader that his prior convictions were probative of "the volatile issue of credibility" and could be used to impeach during cross examination.[2] Schrader chose not to testify. On appeal he argues that this ruling was an abuse of the court's discretion under Fed.R.Evid. 609(a)(1), was made without a sufficient inquiry and without sufficiently specific findings in support, and effectively prevented Schrader from taking the stand in his own defense. However, these contentions may not be raised on appeal because Schrader did not testify. *See Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

■ *C. Lesser Included Offense.* Citing *Keeble v. United States,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), defendants appeal the district court's refusal to instruct

---

**2.** Schrader was convicted in 1988 of unlawful possession of an unregistered firearm. While serving his sentence for that crime, Schrader escaped from a half-way home, resulting in a second felony conviction in 1989.

1352

the jury on the lesser included offense of simple assault. *See* 18 U.S.C. § 113. However, to warrant a lesser included offense instruction, "the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." *United States v. Two Bulls,* 940 F.2d 380, 381 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 953, 117 L.Ed.2d 121 (1992), quoting *Schmuck v. United States,* 489 U.S. 705, 716 n. 8, 109 S.Ct. 1443, 1451 n. 8, 103 L.Ed.2d 734 (1989).

Unlike the defendant in *Keeble,* defendants here were not charged with aggravated assault or assault with a dangerous weapon. On the facts of this case, the only difference between a § 111 and a § 113 assault violation is whether the assault was committed on a federal officer for purposes of § 111. After the district court denied their motion to dismiss on the federal officer issue, defendants did not dispute that tribal officers Greenwald and Long were BIA-designated law enforcement officers, employed by OSTPSC under a valid 638 contract and engaged in the performance of their official duties at the time of their encounter with defendants. Therefore, a lesser included offense instruction for simple assault was not warranted "because there was no dispute on the elements differentiating" the lesser and the greater crimes. *United States v. Elk,* 658 F.2d 644, 649 (8th Cir.1981).

■■■ As there was trial error but not insufficiency of the evidence, defendants may be retried. *See Burks v. United States,* 437 U.S. 1, 14 & n. 8, 98 S.Ct. 2141, 2148 & n. 8, 57 L.Ed.2d 1 (1978). The judgments of the district court are reversed and the cases are remanded for further proceedings consistent with this opinion.

BEAM, Circuit Judge, concurring and dissenting.

I concur in parts I, III and IV of the opinion of the court. I dissent with regard to part II because any error in the formulation of the instruction was harmless under the facts of this case.