**UNITED STATES of America, Appellee.**

v.

**David Joseph SHEDLOCK, Appellant.**

No. 95–1434.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1995.

Decided July 19, 1995.

James Whalen, Asst. Federal Public Defender, Des Moines, IA, argued, for appellant.

Stephen Patrick O'Meara, Asst. U.S. Atty., Des Moines, IA, argued, for appellee.

Before McMILLIAN, BEAM and HANSEN, Circuit Judges.

BEAM, Circuit Judge.

David Joseph Shedlock appeals his conviction of forcibly assaulting, resisting, or interfering with a Deputy United States Marshal. *See* 18 U.S.C. § 111(a)(1). Shedlock argues that the district court improperly admitted certain testimony during the jury trial and that there is insufficient evidence to support his conviction. We affirm.

## I. BACKGROUND

Viewed in the light most favorable to the government, the evidence at trial established the following. David Joseph Shedlock expresses his views against abortion by regularly picketing at a Planned Parenthood clinic in Des Moines, Iowa. In August of 1994, because of violence at other clinics and increased picketing at the Des Moines clinic, U.S. Marshals were assigned to guard the facility. Frequently, Deputy Marshal Shawn Palmer's duties included guarding the clinic. While on such duty, Deputy Palmer had observed Shedlock protesting several times.

On August 17, 1994, Shedlock and two companions began picketing at the clinic at around 11:00 a.m. Shortly after noon, Shedlock confronted Angela Stansbery, a clinic patron, and the two young boys accompanying her. Stansbery testified that she went to the clinic to obtain birth control pills. As she was driving away, Shedlock ran up to her, displayed a protest sign, and yelled at her.

She testified that Shedlock appeared extremely agitated and upset. Her encounter with Shedlock frightened her so much that she sped away, almost hitting another car.

After Stansbery left, Shedlock and several other protestors moved to an alley on the east side of the clinic. At that time, Deputy Palmer was stationed in his car at the parking lot on the south side of the clinic. Shedlock shouted angrily at Deputy Palmer and another Deputy Marshal.

At approximately 1:00 p.m., Deputy Palmer's shift at the clinic ended. He drove out of the parking lot and into the alley where Shedlock and the other protesters were standing. Palmer stopped his car at the end of the alley and then turned left. He noticed Shedlock chasing after him. Shedlock was carrying protest signs and yelling at him. While Deputy Palmer was stopped at a traffic light, Shedlock approached his car and violently pounded on it with his fists. Shedlock held protest signs as he pounded. Palmer got out of his car and walked towards Shedlock, who was still waving his signs. According to Palmer, Shedlock was extremely agitated and moved toward him, but Shedlock did not touch him at any time. Because Shedlock had moved too close to Deputy Palmer and in an attempt to ensure his own safety, Deputy Palmer struck Shedlock and Shedlock fell down.

Deputy Palmer arrested Shedlock. Shedlock was uncooperative while being arrested. Shedlock was later charged and convicted with assaulting or interfering with a Deputy U.S. Marshal.

## II. DISCUSSION

### A. Evidentiary Objections

■ Shedlock raises three evidentiary objections to his conviction. He contends that the district court abused its discretion by admitting: 1) Angela Stansbery's testimony about her confrontation with Shedlock; 2) testimony about a subsequent confrontation between Shedlock and two clinic employees; and 3) Gil Hansen's expert testimony about the "reactionary gap" rule and the use of force by law enforcement officers. We will reverse these evidentiary rulings only if the

district court abused its discretion in admitting the testimony. *See, e.g., United States v. LeAmous,* 754 F.2d 795, 797 (8th Cir.) (admissibility of evidence generally), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985); *United States v. Anderson,* 879 F.2d 369, 378 (8th Cir.) (admissibility of "other acts" evidence pursuant to Federal Rule of Evidence 404(b)), *cert. denied,* 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989); *Pelster v. Ray,* 987 F.2d 514, 525 (8th Cir.1993) (admissibility of expert testimony). In addition, when reviewing evidence admitted under Federal Rule of Evidence 404(b), we will only disturb the district court's discretion if the defendant demonstrates that "the proof clearly had no bearing on any of the issues involved." *United States v. Burk,* 912 F.2d 225, 228 (8th Cir.1990).

### 1. Angela Stansbery's testimony

■ Shedlock argues that the district court erroneously admitted Stansbery's testimony that Shedlock appeared extremely agitated when he approached her. The district court permitted this testimony on the grounds that it was a part of the entire incident. This supported the government's theory that Shedlock was especially angry that day.

Shedlock contends that this earlier confrontation is irrelevant and highly prejudicial. Both arguments fail. Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a disputed fact more or less probable. Under this standard, Stansbery's testimony is relevant to show that any actions taken by Shedlock were intentional and it tends to demonstrate Shedlock's state of mind on that afternoon.

■ Shedlock's unfair prejudice argument also fails. Federal Rule of Evidence 403 requires exclusion of relevant testimony if that testimony has an "undue tendency to suggest decision on an improper basis." Rule 403, Adv.Comm.Notes. *See also United States v. Yellow,* 18 F.3d 1438, 1442 (8th Cir.1994). Shedlock correctly points out areas of concern with Stansbery's testimony. Stansbery cried on the witness stand. She

testified that her confrontation with Shedlock frightened her so much that she almost got into a car accident. She repeatedly mentioned the two four-year old boys who accompanied her into the clinic. These factors have no bearing on whether Shedlock assaulted or otherwise interfered with a Deputy U.S. Marshal and are potentially inflammatory. However, the possible harm does not reach the level of unfair prejudice. The district court took adequate steps to limit any potential harm from occurring. The court restricted Stansbery's testimony about her own anxiety, and swiftly removed Stansbery from the stand after she started crying. In view of these actions, we find that the district court did not abuse its discretion in admitting Stansbery's testimony.

### 2. Testimony about a subsequent confrontation

■ Shedlock next argues that the district court erroneously admitted evidence of an incident between Shedlock and Planned Parenthood staff that occurred on September 15, 1994, twenty-nine days after Shedlock's confrontation with Deputy Palmer. The testimony about the September incident is summarized as follows. Around lunchtime on September 15, 1994, Shedlock and several other individuals were protesting at the Planned Parenthood clinic in Des Moines, Iowa. Two Planned Parenthood employees, the director of security and an unidentified female worker, were going out to lunch. The two got on a motorcycle. While they were stopped at an intersection, Shedlock startled them by running up to them and yelling at them. The district court, relying on Federal Rule of Evidence 404(b), admitted this testimony to help demonstrate intent and lack of mistake.

■ Rule 404(b) contains several prerequisites to the introduction of "other acts" evidence. Like all other evidence, it must be relevant and not unduly prejudicial. *Burk,* 912 F.2d at 228. The other act must be sufficiently close in time and manner to the incident charged. *Id.* There must be sufficient evidence to support a jury finding that the defendant committed the other act. *Id.* Assuming these prerequisites are met, Rule

404(b) permits the introduction of the other act "unless it tends to prove only the defendant's criminal disposition." *Id.*

■ Shedlock raises several challenges to the admission of the September incident under Rule 404(b). First, he contends that the September incident is irrelevant to his intent twenty-nine days earlier. We disagree. As a general rule, evidence of other acts committed by a defendant may be admitted to prove intent or absence of mistake. Intent is a required element of the crime of assaulting or interfering with a Deputy U.S. Marshal, and Shedlock's intent was a major issue at trial. We have previously permitted the admission of later acts to demonstrate a party's previously held intent. *See, e.g., United States v. Johnson,* 934 F.2d 936, 940 (8th Cir.1991) (in drug conspiracy case, court admitted later drug transactions to show intent). As in *Johnson,* Shedlock's behavior on September 15 helps show Shedlock's intent in his confrontation with Deputy Palmer.

■ Shedlock's prejudice argument is similarly unsuccessful. Shedlock contends that introduction of the September incident caused him to be portrayed as an "out-of-control traffic menace posing a danger to the general public." We are aware that traffic menaces are often disliked. Nonetheless, we find that the prejudice, if any, did not so outweigh the probative value of the evidence so as to bar its admission.

■ Shedlock next argues that because he frequently engaged in confrontations at the Planned Parenthood clinic, not all confrontations qualify as an appropriate basis for comparison. Under his theory, acts that occur frequently require a higher level of similarity before they can truly serve as comparable acts. Shedlock reasons that because the alleged confrontation on September 15 involved Planned Parenthood employees, rather than a Deputy Marshal, the two confrontations are insufficiently similar. We reject this theory, and with it, Shedlock's attempt to require a perfect match between the two incidents. Even if heightened similarity is required, however, the two confrontations are amazingly similar. The September 15 confrontation involved Shedlock, a Planned

Parenthood security officer, and the security officer's vehicle (a motorcycle). The August 17 confrontation involved Shedlock, a Government "security officer," and the security officer's vehicle (a car). Absent another confrontation with a Deputy U.S. Marshal, it is hard to imagine two more similar incidents.

Finally, Shedlock contends that the September 15 confrontation was too remote in time to affect his intent on August 17. We have previously considered whether a particular number of years between incidents causes an incident to be considered too remote in time. *Burk*, 912 F.2d at 228. No hard and fast rule governs. Rather, we undertake a reasonableness inquiry, reviewing the particular facts and circumstances at issue. *Id.* In the instant case, less than a month separates the two incidents. Although there may be instances when a day is like a year, or even a thousand years, Shedlock has not demonstrated that the twenty-nine day lapse makes any particular difference here. The district court correctly permitted this testimony.

### 3. Gil Hansen's testimony

Shedlock's last evidentiary objection involves the expert testimony of Gil Hansen, a Law Enforcement Academy instructor. Hansen testified that he trains police officers to maintain a "reactionary gap" between them and a suspect in an effort to safeguard the officers. If a suspect invades this gap, Hansen trains the officers to take all protective action, including the use of force, necessary to maintain the gap. The district court admitted Hansen's testimony to aid the jury regarding Palmer's state of mind and whether or not Shedlock acted forcibly.

As a general rule, expert testimony is admissible if it is relevant, helpful to the jury, and will not confuse the jury. *See* Fed.R.Evid. 702. Expert testimony is helpful to a jury if it concerns matters beyond the knowledge of average individuals; however, it cannot supplant the jury's role in evaluating the evidence. *United States v. French*, 12 F.3d 114, 116 (8th Cir.1993).

Shedlock contends that Hansen's testimony was not relevant to any material issue in the case because Hansen testified about excessive force, an issue not before the jury. It is true that whether or not Deputy Palmer used excessive force is not directly relevant to whether or not Shedlock assaulted or otherwise interfered with Deputy Palmer. Nonetheless, Shedlock interjected the excessive force issue into the case as part of his defense by questioning the propriety of Deputy Palmer's actions in hitting him. For example, Shedlock's counsel asked Deputy Palmer on cross-examination whether or not he always pushed people down when those people came within approximately eighteen inches of Deputy Palmer. As such, Hansen's testimony had sufficient relevance to this case.

Shedlock also challenges the appropriateness of Hansen's "reactionary gap" testimony. This testimony helped the jury consider what might have gone through a reasonable officer's mind when an aggressive person confronts him or her. To sustain a conviction under 18 U.S.C. § 111, the jury must find that Shedlock's actions were forcibly committed. *See United States v. Schrader*, 10 F.3d 1345, 1348 (8th Cir.1993) (defining force as used in 18 U.S.C. § 111 to mean "proof of actual physical contact, or ... proof of such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death") (internal quotation omitted). Because this evaluation of force necessarily requires an inquiry into a what a reasonable officer would do or think in a particular situation, expert testimony about a reasonable police officer's state of mind is proper.

Shedlock's other contentions are without merit. The district court did not abuse its discretion in admitting Hansen's testimony.

### B. Sufficiency of the Evidence

Finally, Shedlock contends that there is insufficient evidence to support his conviction of forcibly assaulting, impeding, resisting or interfering with a Deputy U.S. Marshal. We will affirm a conviction when, "after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The government receives "the benefit of all reasonable inferences which may logically be drawn" from the evidence. *United States v. Johnson*, 18 F.3d 641, 645 (8th Cir.1994) (citation omitted).

Shedlock argues that he did not act forcibly. As previously indicated, this circuit has defined the force necessary to trigger the statute as "proof of actual physical contact, or ... proof of such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death." *Schrader*, 10 F.3d at 1348 (internal citation omitted). Especially when the force alleged does not involve actual physical contact, as here, "[w]hether a person has opposed the efforts of federal agents with sufficient force to engage the statute can ... be a troublesome question of degree." *United States v. Cunningham*, 509 F.2d 961, 963 (D.C.Cir. 1975). On balance, however, we find that Shedlock's behavior, including pounding on the car door and aggressively advancing toward Deputy Palmer, satisfies the force requirement of the statute. *See, e.g., United States v. Walker*, 835 F.2d 983, 987 (2d Cir. 1987) (the defendant removing his jacket, combined with verbal threats, constituted sufficient force).

Alternatively, Shedlock argues that, even if he did act forcibly, his actions did not constitute an assault. We need not decide whether an assault itself is adequately supported by the evidence. When considering all of Shedlock's interactions with the deputy, the record contains enough evidence to sustain a conviction for willfully and forcibly impeding or resisting a Deputy United States Marshal. *See, e.g., United States v. Henderson*, 770 F.2d 724, 730 (8th Cir.1985) (sustaining a conviction under 18 U.S.C. § 111 using this logic).

## III. CONCLUSION

The district court did not abuse its discretion in admitting certain evidence. Shed-

lock's conviction is adequately supported by the evidence. Accordingly, we affirm.