# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3888

_____

United States of America

*Plaintiff - Appellee*

v.

Justin Janis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: October 23, 2015
Filed: January 15, 2016

_____

Before WOLLMAN, BYE, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Justin Janis was convicted of assault of a federal officer, in violation of 18 U.S.C. § 111, following an altercation with Ann Mousseau, an officer of the Oglala Sioux Tribe ("OST") Department of Public Safety. He appeals his conviction,

arguing that the district court[1] (1) erred in ruling that OST public safety officers such as Mousseau are federal officers under 18 U.S.C. § 111, and (2) erred in instructing the jury that Mousseau was a federal officer at the time of the encounter with Janis. We affirm.

I.

On November 27, 2013, Officer Mousseau responded to a report that individuals, including Janis, were consuming alcohol at a home on the Pine Ridge Indian Reservation near Kyle, South Dakota. At the time, tribal law prohibited alcohol consumption on the Pine Ridge Reservation. Mousseau arrived at the residence and attempted to open the door, but Janis was pushing against the door to hold it shut. When Mousseau finally was able to open the door, Janis pushed her on the shoulder and then hit her, striking her on the neck. Mousseau deployed her taser, but it did not incapacitate Janis, who repeatedly attempted to kick Mousseau. Mousseau ultimately gained control over Janis and placed him under arrest.

An indictment charged Janis with one count of assault of a federal officer, in violation of 18 U.S.C. § 111. Prior to trial, Janis moved to dismiss the indictment. He argued that the district court lacked jurisdiction over the case because Officer Mousseau was not acting as a federal officer at the time of the alleged offense. The district court denied the motion. The court found that the OST Department of Public Safety operated pursuant to a contract between the department and the Bureau of Indian Affairs ("BIA"), which under 25 U.S.C. § 2802 has responsibility over the provision of law enforcement services in Indian country. Citing our decisions in *United States v. Schrader*, 10 F.3d 1345 (8th Cir. 1993) and *United States v. Bettelyoun*, 16 F.3d 850 (8th Cir. 1994), the court recognized that law enforcement

---

[1] The Honorable Jeffrey L. Viken, Chief Judge, United States District Court for the District of South Dakota.

officers employed under such contracts are considered federal officers while they are engaged in the performance of their official duties, regardless of whether those duties involved the enforcement of federal or tribal law. The court ruled as a matter of law that the contract between the BIA and the OST represented a proper delegation of law enforcement authority and that Mousseau was employed pursuant to that contract. The court further found that whether Mousseau was acting in her official capacity at the time of the alleged assault was a jury question. Prior to trial, however, Janis and the Government signed a stipulation that "at the time of the act alleged in the Indictment, Ann Mousseau was employed by the Oglala Sioux Tribe as an officer with the Department of Public Safety and was doing what she was employed by the Tribe to do."

At the close of Janis's trial, the district court instructed the jury to decide whether "at the time of the act, Ann Mousseau was an officer with the Oglala Sioux Tribe, Department of Public Safety." The court's instruction also informed the jury that "Mousseau was a federal officer at the time alleged in the indictment." The jury returned a guilty verdict, and the court sentenced Janis to time served (4 months) and 2 years' supervised release. Janis appeals.

## II.

Janis first argues that the district court erred in denying his motion to dismiss the indictment because the court incorrectly found that OST Department of Public Safety officers are "federal officers" under 18 U.S.C. § 111 when these officers are enforcing tribal laws. We review *de novo* the denial of a motion to dismiss an indictment. *United States v. Nichols*, 574 F.3d 633, 636 (8th Cir. 2009).

The Indian Law Enforcement Reform Act provides that the Secretary of the Interior, acting through the BIA, "shall be responsible for providing, or for assisting in the provision of, law enforcement services in Indian country." 25 U.S.C.

§ 2802(a). The statute permits the BIA to enter into agreements with tribal agencies that allow those agencies to "aid in the enforcement or carrying out in Indian country of a law of either the United States or an Indian tribe that has authorized the secretary to enforce tribal laws." *Id.* at § 2804(a)(1). This type of law enforcement agreement is known as a "638 contract," referring to the public law number authorizing such arrangements. *Schrader*, 10 F.3d at 1350. When acting under the authority of such an agreement, "a person who is not otherwise a Federal employee shall be considered to be . . . an employee of the Department of the Interior only for purposes of . . . section[] 111 . . . of Title 18." 25 U.S.C. § 2804(f). We previously have held that the "plain meaning" of these provisions is that "tribal officers are afforded the same protection under 18 U.S.C. § 111 that Congress has afforded BIA employees" and that such officers receive that protection "regardless of whether the officer is enforcing a tribal, state, or federal law, so long as he is engaged in the performance of his official duties." *Schrader*, 10 F.3d at 1350-51.

Janis does not dispute that the BIA entered into a 638 contract with the OST Department of Public Safety. Instead, he points out that the BIA can enforce tribal law only where the tribe "has authorized the Secretary to enforce tribal laws." 25 U.S.C. § 2804(a)(1). Janis argues that because no evidence showed that the OST ever authorized the BIA to enforce tribal law, OST public safety officers like Mousseau enforce tribal law pursuant to the tribe's inherent authority rather than any delegation of enforcement authority from the BIA.

The 638 contract between the OST and the BIA forecloses Janis's argument. Through that contract, the Department of Public Safety "agree[d] to provide for the protection of lives and property for persons visiting or residing within the . . . Pine Ridge Indian Reservation." The contract required the department to "assist the [BIA], and other federal, tribal and state law enforcement officials in the investigation of tribal, state or federal offenses." In return, the BIA agreed to reimburse the department for the expenses it incurred. These provisions demonstrate the BIA's

-4-

responsibility and authority to enforce both tribal and federal laws on the reservation. Consistent with the Indian Law Enforcement Reform Act, the contract enlisted a tribal agency to aid in that enforcement. *See* 25 U.S.C. § 2804(a). Because OST public safety officers operated pursuant to this agreement, the district court correctly concluded that those officers "are afforded the same protection under 18 U.S.C. § 111 that Congress has afforded BIA employees," *Schrader*, 10 F.3d at 1350.

III.

Janis also claims that the district court abused its discretion when it instructed the jury that "Mousseau was a federal officer at the time alleged in the indictment." He argues that this issue presented a jury question that the court inappropriately decided as a matter of law. "Generally, when evaluating jury instructions, we review for abuse of discretion." *United States v. Gill*, 513 F.3d 836, 849 (8th Cir. 2008). "In conducting such review, this court must determine whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." *United States v. Beckman*, 222 F.3d 512, 520 (8th Cir. 2000) (internal quotations omitted). In addition, harmless-error analysis applies to issues of instructional error, including where the district court "misdescrib[es] an element or omit[s] an element altogether." *United States v. Inman*, 558 F.3d 742, 749 (8th Cir. 2009). Accordingly, an error in jury instructions "may be disregarded if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)); *see also Ferguson v. Bruton*, 217 F.3d 983, 985 (8th Cir. 2000) (affirming a kidnapping conviction where trial court's omission of an element from the jury instruction was "harmless beyond a reasonable doubt").

In prosecutions involving assaults of individuals alleged to be federal officers because they are tribal officers operating under a 638 contract, we have held that the court should decide as a matter of law whether the officers of the relevant tribal law

-5-

enforcement department, as a class, qualify as federal officers. *United States v. Roy*, 408 F.3d 484, 489 (8th Cir. 2005). We consistently have held, however, that the jury must determine whether a particular victim was employed as an officer of that department. *See id*. ("Whether [the victim] *himself was such an officer*, as well as whether he was engaged in official duties at the time of the incident, are questions of fact for the jury.") (emphasis added); *see also Bettelyoun*, 16 F.3d at 853 (determining that the jury must decide "whether the government proved beyond a reasonable doubt that the assault victims were in fact federal officers"); *United States v. Oakie*, 12 F.3d 1436, 1440 (8th Cir. 1993) ("Whether a [particular officer] was in fact a [tribal officer]" was a question for the jury.).[2]

In light of this precedent, we hold that the district court abused its discretion when it instructed the jury that Mousseau was a federal officer as a matter of law. Mousseau qualified as a federal officer under 25 U.S.C. § 2804(f) only if she was a tribal officer, and the court should have permitted the jury to determine whether she was a tribal officer. *See Roy*, 408 F.3d at 489; *Bettelyoun*, 16 F.3d at 853. Although the district court instructed the jury to decide whether Mousseau was a tribal officer, the court infringed upon the jury's role when it resolved as a matter of law the

---

[2] In *United States v. Drapeau*, we appeared to contradict our previous holdings on this division of roles when we stated that "[w]hether [the assault victim] was a federal officer within the meaning of § 111 was a question of law for the court." 644 F.3d 646, 653 (8th Cir. 2011). However, this issue was not before us in *Drapeau*, which assessed only the sufficiency of the evidence that the assaulted officer was engaged in the performance of his official duties. *Id.* at 652. We thus decline to read this statement as upsetting our prior holdings that the individual victim's status as a tribal and federal officer is a jury question. *See Roy*, 408 F.3d at 489; *Bettelyoun*, 16 F.3d at 853; *see also Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) ("[W]hen faced with conflicting panel opinions, the earliest opinion must be followed 'as it should have controlled the subsequent panels that created the conflict.'") (quoting *T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006)).

ultimate question regarding Mousseau's qualification as a federal officer. *See Bettelyoun*, 16 F.3d at 853. The court only should have instructed the jury that OST public safety officers, as a class, qualify as federal officers. The court then should have required the jury to determine whether Mousseau was employed as an OST public safety officer and whether she was acting in that capacity at the time of the assault.

Although the district court improperly decided as a matter of law that Mousseau was a federal officer, overwhelming evidence demonstrated that Mousseau was in fact an OST public safety officer and, therefore, a federal officer. Most importantly, Janis stipulated to this fact, and this stipulation was entered into evidence as an exhibit for the jury. In addition, Mousseau testified that she was employed as an officer of the OST Department of Public Safety, and Janis did not dispute that assertion. In light of this uncontroverted evidence that Mousseau was a tribal officer, we find it clear beyond a reasonable doubt that a rational jury still would have found Janis guilty if the district court had delivered the proper instruction. The district court's error in resolving as a matter of law a question it should have left for the jury, therefore, was harmless beyond a reasonable doubt. *See Ferguson*, 217 F.3d at 985.

IV.

For the reasons set forth above, we affirm Janis's conviction for assault of a federal officer under 18 U.S.C. § 111.

_____