UNITED STATES of America, Appellee,

v.

Andres Gonzolo **TORRES–DIAZ**, also known as Juan Carlos, also known as Juan Carlos Torres, also known as Andres Diaz Torres, Appellant.

UNITED STATES of America, Appellee,

v.

Mounir Daoud **MARDINI**, Appellant.

Nos. 94–2677, 94–2678.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1995,

Decided July 13, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 22, 1995.*

---

* McMillian and Morris Sheppard Arnold, Circuit Judges, would grant the suggestion for rehearing en banc.

William M. Orth, Minneapolis, MN, for appellant Torres–Diaz.

Charles L. Hawkins, Minneapolis, MN, for appellant Mardini.

Richard G. Morgan, Asst. U.S. Atty., Minneapolis, MN, for appellee.

Before MAGILL, Circuit Judge, and HEANEY and JOHN R. GIBSON, Senior Circuit Judges.

MAGILL, Circuit Judge.

Andres Torres–Diaz and Mounir Daoud Mardini appeal their sentences imposed after they pleaded guilty to charges stemming from their cocaine trafficking activities. Because we find that Torres–Diaz's alleged errors are unreviewable, and because we find that the district court[1] correctly calculated Mardini's criminal history score, we affirm.

## I. BACKGROUND

Torres–Diaz and Mardini were associated with an extensive cocaine distribution network in Minnesota and California. They were indicted in a fourteen-count indictment.

---

**1.** The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

After a six-week jury trial, Torres–Diaz was partially acquitted. The jury was unable to reach a verdict on the remaining counts involving Torres–Diaz and Mardini. Neither the government nor the defendants wished to repeat the six-week ordeal, so Torres–Diaz and Mardini entered into plea agreements with the government.

Torres–Diaz entered a guilty plea to one count of distributing two kilograms of cocaine that carried a mandatory minimum sentence of 60 months imprisonment. The plea agreement provided that based on stipulated facts, the resulting offense level would be 26. The agreement further provided that:

13. The above-stated positions of the parties with respect to sentencing factors are not binding on the Court. If the factors are determined by the Court to differ from those stated above [*i.e.*, the base offense level calculations], the defendant shall not be entitled to withdraw from the Plea Agreement.

14. This Plea Agreement presumes the defendant has no prior criminal record. The investigation concerning the defendant's adult and juvenile history continues. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentences which should be included within his criminal history under the sentencing guidelines, then the guideline range outlined in this Plea Agreement will be adjusted to reflect the range appropriate for the criminal history of the defendant, and the defendant will not be entitled to withdraw from the Plea Agreement in that event.

15. The government and the defendant understand that, assuming the defendant's criminal history category is I, the sentencing guidelines applicable to the charge in Count I of the Indictment call for a determinate, nonparolable sentence with a range f[ro]m 63 to 78 months (level 26), absent a motion for a downward departure by the government. A mandatory sentence of imprisonment of five years (60 months), without parole, would be required in the absence of a motion for a downward departure by the government.

Appellee's Add. at A4–A5.[2] The plea agreement also provided that the government would make § 5K1.1 and § 3553(e) motions for downward departure if Torres–Diaz provided substantial assistance. Torres–Diaz assisted law enforcement authorities, and the government made a combined § 5K1.1 and § 3553(e) motion. The presentencing report (PSR) revealed that Torres–Diaz had a criminal history category of IV. The PSR computed the base offense level as 34 with a two level reduction for acceptance of responsibility, for a total offense level of 32. This resulted in a guidelines range of 168–210 months. At the sentencing hearing, Torres–Diaz did not object to the facts contained in the PSR. The district court began with the recommendations in the PSR and departed downward to sentence Torres–Diaz to 100 months imprisonment, a $50 special assessment and a period of supervised release. The court also gave Torres–Diaz credit for presentence custody beginning February 15, 1994.[3]

2. The dissent characterizes the sentencing court's action as a rejection of a "sentencing" plea agreement (*i.e.*, an agreement whereunder, in consideration of his plea of guilty, Torres–Diaz was assured a certain sentence). However, the dissent mischaracterizes the plea agreement and the action of the sentencing court. The record indicates that the plea agreement was not a sentencing agreement, but a "charge" agreement (*i.e.*, an agreement whereunder, in consideration of his plea of guilty on one count, the other counts pending against Torres–Diaz were dismissed). Although it memorializes the parties' positions regarding the sentence, paragraphs 13 through 15 of the agreement expressly provide that the positions of the parties are not binding on the sentencing judge and that the sentencing judge may impose a higher sentence. The plea agreement did not promise a specific sentence, so the refusal of the sentencing court to effect Torres–Diaz's desired outcome was not a rejection of the plea agreement and does not entitle him to withdraw his guilty plea.

3. Torres–Diaz was arrested in Dade County, Florida on August 4, 1992, on an unrelated marijuana charge. He was sentenced to five years imprisonment. As a result of this state marijuana conviction, a prior sentence of "community control" resulting from a state cocaine conviction was revoked and a seven-year sentence was imposed. This sentence was to run concurrently with the five-year marijuana sentence. Torres–Diaz remained in Dade County Jail until he was released pursuant to a Writ of Habeas Corpus Ad Prosequendum commanding his presence in the

Mardini pleaded guilty to one count charging him with maintaining a "stash house" between July 1, 1988, and December 31, 1989, in violation of 21 U.S.C. § 856(a)(1), which prohibits any person from "knowingly open[ing] or maintain[ing] any place for the purpose of manufacturing, distributing, or using any controlled substance." When questioned by the court concerning the factual basis for the plea, Mardini stated that he used and stored cocaine in an office at the rear of a tavern he owned and in a nearby apartment. Mardini's PSR calculated a base offense level of 16, less a two level reduction for acceptance of responsibility, resulting in a total adjusted offense level of 14. The PSR calculated Mardini's criminal history as category III based on a total of four criminal history points. Three of these four points stemmed from a sixteen-month sentence following three California state convictions arising out of a narcotics transaction at the apartment in July 1989. Mardini objected to the PSR, arguing that the three drug trafficking convictions were related to the stash house offense, and therefore the resulting sentence should not be counted as a separate prior sentence under the guidelines. The district court rejected Mardini's argument and adopted the recommendations of the PSR, yielding a range of 21–27 months imprisonment. The government made a § 5K1.1 motion, but the district court concluded that a downward departure was not appropriate and sentenced Mardini to 21 months imprisonment with credit for time served, a $50 special assessment and a period of supervised release.

## II. DISCUSSION

### A. Mardini's Claim

Mardini challenges the district court's application of U.S.S.G. §§ 4A1.1(a) and 4A1.2 (Nov. 1989). Mardini argues that his California state convictions for transportation and sale of marijuana, transportation and sale of cocaine, and possession of marijuana for sale are related to the offense of maintaining a stash house, and should therefore be consid-

ered part of the offense of maintaining a stash house rather than criminal history. We disagree.

Section 4A1.1(a) directs the court to add three points to a defendant's criminal history score for "each prior sentence of imprisonment exceeding one year and one month." Section 4A1.2(a)(1) defines a prior sentence as one "previously imposed upon adjudication of guilt ... for conduct not part of the instant offense." Section 1B1.3 indicates that "relevant conduct" is the conduct that is "part of the instant offense." This interpretation is confirmed by subsequent clarifying amendments to the guidelines. *See* U.S.S.G. § 1B1.11(b)(2) (Nov. 1993). The commentary to the 1993 version of § 4A1.2 provides "[c]onduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." U.S.S.G. § 4A1.2 comment. (n. 1) (Nov. 1993).

Conduct that is a "severable, distinct offense" is not part of the offense of conviction for purposes of § 4A1.1. *United States v. Blumberg*, 961 F.2d 787, 792 (8th Cir.1992). To make the factual determination whether the conduct is part of the instant offense, "the district court considers several factors, including temporal and geographical proximity, common victims, and a common criminal plan or intent." *Id.* Here, although there is temporal and geographical proximity, the stash house offense occurred over an extended period of time. As the district court rightly observed, a defendant is not entitled to merge all criminal activities simply because these activities occurred over a single span of time, or out of a common base of operations. Moreover, the victims of the stash house violation and the distribution violations, to the extent that there are any, are distinct. The victims of the stash house count are Mardini (as a cocaine user) and the purchasers of cocaine through transactions facilitated by Mardini. The victim of Mardini's distribution activity was the purchaser (who was actually a narcotics agent). Additionally, Mardini's plan and intent in main-

District of Minnesota. Torres–Diaz remained in Minnesota in the custody of the U.S. Marshal until October 1993, when he was returned to

Florida. Torres–Diaz was again returned to the custody of the U.S. Marshal on February 14, 1994.

taining the stash house appears to have been to enable himself and his friends to "party" with an adequate supply of cocaine. This intent differs entirely from the intent accompanying the narcotics sale.

Mardini consistently characterized his activities relating to the stash house as either turning a blind eye to the distribution activities of others, or as the maintenance and storage of relatively small amounts ("ones, two ounces") of cocaine for personal use "to party." This type of activity differs substantially from the distribution-related activities that resulted in Mardini's state convictions. Thus, the distribution activity cannot be said to be in furtherance of the stash house offense. *See* U.S.S.G. § 1B1.3(a) (Nov. 1989). Accordingly, we hold that the district court did not clearly err when it concluded that Mardini's distribution activities are not relevant conduct with respect to his stash house offense, and therefore considered the sentence stemming from the distribution activities to be a prior sentence under § 4A1.1. *See Blumberg,* 961 F.2d at 792 (standard of review).[4]

■ Moreover, we hold that any error by the district court was harmless:

> If the sentence imposed falls within the guideline range urged by the appellant and if it is clear that the sentencing court would have imposed the same sentence regardless of whether the appellant's argument for a lower guideline range ultimately prevailed, then the matter is not reviewable and will not be remanded for resentencing. The error in calculating the guideline range is deemed harmless because the appellant faces the same sentence, win or lose.

*United States v. Simpkins,* 953 F.2d 443, 446 (8th Cir.), *cert. denied,* 504 U.S. 928, 112 S.Ct. 1988, 118 L.Ed.2d 585 (1992). Were Mardini to prevail, the applicable guidelines range would be 15–21 months instead of 21–

27 months. Mardini's 21–month sentence falls within both guidelines ranges. Since the government made a § 5K1.1 motion, the district court was free to depart downward, yet it chose not to. The district court's stated reasons for refusing to depart downward make it clear that Mardini faces the same sentence win or lose.

### B. Torres–Diaz's Claims

■ We review a challenge to the district court's determination of credit for time served for clear error. *Blumberg,* 961 F.2d at 792. Apart from a reference in the addendum to the PSR and an occasional tangentially relevant allusion elsewhere in the record, *see, e.g.,* Appellant's Add. at A–13, the parties have identified no portions of the record to support their contradictory assertions concerning the duration of Torres–Diaz's state sentence. *Compare* Appellant's Br. at 10 (post-January 1994 detention due to federal "hold") *with* Appellee's Br. at 5 (state sentence did not expire until September 20, 1994). Moreover, we have carefully reviewed the record on appeal, and have found it to be utterly devoid of the materials necessary to resolve the issues raised on appeal. Given the deplorable state of the record, we are unable to find that the district court clearly erred when it awarded Torres–Diaz credit for time served beginning February 15, 1994. *See In re Schnabel,* 612 F.2d 315, 318 (7th Cir.1980) (affirming bankruptcy court determination where appellants failed to provide "a proper record on which to evaluate their argument"). We admonish the parties in the future to provide the court with the materials necessary to evaluate their arguments.

■ Torres–Diaz claims that the 100–month sentence was an upward departure from the plea agreement. Torres–Diaz misconstrues the plain language of the plea agreement. The plea agreement specifically contemplates that the court might exercise

---

4. Mardini's reliance upon *United States v. Kenyon,* 7 F.3d 783 (8th Cir.1993), is misplaced. *Kenyon* held that a state conviction for possession of cocaine was part of the instant offense of conspiracy to possess with intent to distribute cocaine. *Id.* at 787. However, *Kenyon* is distinguishable because *Kenyon* involved a single intent or plan (to possess with intent to distribute cocaine). Indeed, although it was not argued as such, *Kenyon's* act of possessing cocaine could easily be seen as an overt act in furtherance of the charged conspiracy. This convergence differs from the instant case in which Mardini repeatedly denied that his operation of the stash house was in any way connected with his own personal distribution activities.

its discretion adversely to Torres–Diaz and explicitly notes that Torres–Diaz's criminal history might result in an increased sentencing range. Thus, Torres–Diaz's challenge is to the extent of the district court's downward departure. This argument is meritless. The extent of a downward departure is unreviewable. *United States v. Dutcher,* 8 F.3d 11, 12 (8th Cir.1993).

## III. CONCLUSION

The judgment of the district court is, in all respects, affirmed.

HEANEY, Senior Circuit Judge, concurring in part and dissenting in part.

I agree that the conviction of Mounir Daoud Mardini should be affirmed. I believe, however, that the conviction of Andres Gonzolo Torres–Diaz must be vacated and the matter remanded to the district court to permit Torres–Diaz to withdraw his plea of guilty.

The written plea agreement is correctly set forth in the majority opinion, but that opinion omits an essential element of the actual plea: the fact that the district court told Torres–Diaz at the time the plea of guilty was entered that if the court, after reviewing the presentence report, disagreed with the agreement struck by the government and Torres–Diaz as to the length of the sentence, the court would throw out the plea and the matter would go to trial. The full colloquy was as follows:

MR. MORGAN: [For the government] ... The plea agreement provides that Mr. Torres–Diaz will plead guilty to Count IV of the indictment. That charges him with aiding and abetting the distribution of approximately two kilograms of cocaine. In exchange for that, the government agrees to move to dismiss all the remaining counts of the indictment, as well as the information filed against the defendant pursuant to Section 851 of Title 21....

....

MR. MORGAN: ... The rest of the plea agreement, the next paragraph, talks about the maximum potential penalty under Count IV of the indictments.

THE COURT: I'll cover that. What does it look like, we're talking here about a possibility of somewhere between 63 and 97 months; is that correct?

MR. MORGAN: That's correct, Your Honor. When we have calculated our guideline recommendations to the Court, which of course the plea agreement recognizes they're not binding on the court, we come out with an offense level of 26.

THE COURT: Does that also contemplate whether it'll be concurrent or consecutive to the prison time which is presently imposed?

MR. MORGAN: We understand that his current time in Florida, according to conversation I had with Mr. Orth, has expired.

Change of Plea Tr. 3–4. The court then went on to state:

Q. [By The Court] Now, you and Mr. Orth have made a deal here with the government. I didn't make the deal. And I have a right to accept it or reject it, right on up to the time of the day of sentencing.

A. Is okay.

Q. You know that?

A. Yes.

Q. If I disagree with the deal, I'll just throw it out. We'll bring back in a jury and we'll go to trial. You understand that that can happen?

A. Yes, I am.

Change of Plea Tr. p. 11.

The court, after reading the presentence report, refused to sentence pursuant to the agreement between the government and Torres–Diaz, but failed to set aside the plea as he promised he would and imposed a sentence of eight and one-half years. In essence, the court went back on its earlier promise to Torres–Diaz. Under these circumstances, the interests of justice require that we remand to the trial court with directions to vacate Torres–Diaz's conviction and sentence and to permit Torres–Diaz to be tried before a jury of his peers.