UNITED STATES of America, Appellee,

v.

William E. "Jack" STREET, Appellant.

No. 94–3972.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1994.

Decided Oct. 4, 1995.

Rehearing Denied Nov. 24, 1995.

Robert Beaird, Kansas City, Missouri, argued (Gary C. Haggerty, Kansas City, Missouri, on the brief), for appellant.

Michael A. Price, Assistant U.S. Attorney, St. Louis, MO, argued, for appellee.

Before WOLLMAN, Circuit Judge, FRIEDMAN *, Senior Circuit Judge, and LOKEN, Circuit Judge.

---

* Daniel M. Friedman, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

FRIEDMAN, Senior Circuit Judge.

The appellant Street challenges his jury conviction under 18 U.S.C. § 111(a) (1988) for forcibly assaulting, resisting, opposing, impeding, intimidating or interfering with park rangers while they were engaged in or on account of the performance of their official duties. He contends that the indictment was duplicitous and multiplicitous, that the district court** improperly admitted certain evidence, and that the evidence was insufficient to support the conviction. He also contends that the district court erred in applying the United States Sentencing Guidelines, and that the double jeopardy clause barred the district court from considering conduct for which he had been prosecuted in state court in calculating the sentence. We reject all of these contentions and affirm the conviction and sentence.

## I.

Viewing the evidence most favorably to the government and drawing all reasonable inferences therefrom, *see United States v. Johnson*, 18 F.3d 641, 645 (8th Cir.1994), the jury could have found the following facts (most of which are not disputed):

At Wappapello Lake in Missouri, which is open to the public for recreational purposes, Army Corps of Engineers park rangers manage the area's natural, cultural and developed resources, and ensure the safety of visitors. The rangers do not enforce state game laws, since they are not authorized to detain or arrest. Pursuant to cooperation agreements between the Corps and law enforcement agencies such as the U.S. Fish and Wildlife Service and the Missouri Department of Conservation, rangers work with other agencies to aid the enforcement of game laws. During deer hunting season rangers are required, as part of their official duties, to perform "deer patrol," which entails observing possible game law violations, noting the details, and informing state conservation agents.

** Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

On November 19, 1993, Rangers Chris Coe and Tim Bischoff were working in uniform; their work included deer patrol. While driving they saw a group of people who appeared to be hunting deer using a dog, which violates Missouri law. By telephone they informed Missouri Conservation Agent Brian Ford, who agreed to meet them at Parking Area 55, which is federal property.

In the parking lot, they saw a truck with a dog and a dog box. Agent Ford checked on the license plate and found that it belonged to a man named Graham. The dog tag showed that the dog belonged to his son. Ford asked the rangers to collect information from driver's licenses and deer tags of persons who entered the lot, while he left to look for the Grahams.

Shortly thereafter Jason Street, the son of the appellant Street, drove into the parking lot. The rangers asked him for his driver's license and deer tag. Jason Street showed the rangers those items.

A truck driven by the appellant Street pulled into the parking lot. Street slammed on his brakes, yelling, "Are those fucking Corps rangers giving you a hard time and ganging up on you?" His son responded: "No, they just asked for my deer tag and driver's license." Street got out of his car and approached the rangers, swinging his fists and shouting obscenities.

Street walked up to Ranger Coe, who was standing at the open door of his truck, and proceeded to berate and to threaten him. Street stood face to face with Coe for about fifteen minutes, trapping him between the open door and the inside of the truck and threatening him with bodily harm. Street said: "You Corps Rangers have no authority here, this is our property, not yours." "I'm going to knock your fucking head in." "I have a hard on for the Corps of Engineers, I'm out to get you guys." "I'm sick and tired of all the things that you have done in the past." Street stepped back, and then lunged back at Ranger Coe, warning "Don't you ever look at me like that again you little fucker."

Street then inquired who requested his son's deer tag. Ranger Bischoff stated, "I asked your son for his deer tag."

Street left Ranger Coe and approached Ranger Bischoff. Street stood face to face with Bischoff and berated and threatened him as well. Street said "If you do not leave the parking lot now, I'm going to knock your fucking head in." Bischoff described Street as "hopping mad," jumping up and down with his arms raised and moving around a lot. He stuck his finger within an inch of Bischoff's eye and his fist within three inches of Bischoff's face.

Ranger Coe moved to follow Street over to Bischoff, but was confronted by Jason Street. Ranger Coe pointed at Jason Street, saying "I need to please have you go back and stand by the truck."

Street then said "Don't you ever point your finger at my son again." He turned and ordered Jason Street to "beat the shit out of that park ranger," referring to Coe. "I'll take this park ranger," meaning Bischoff. Jason Street ripped off his vest, threw it on the ground, and assumed a fighting stance. Street continued to yell obscenities, warning the rangers to leave the parking lot now "or we're going to beat the shit out of you."

Bischoff then told Street that he and Coe would leave. They got in their truck and started backing out of the lot. Street followed the truck on foot, continuing to shout threats and obscenities.

Before the rangers' truck had left the parking lot, Missouri State Conservation Agent Ford arrived, in response to a radio request for immediate assistance Bischoff made while Street was confronting Coe. Ford got out of his truck while Street was still shouting obscenities at the rangers and demanding that they leave the lot.

Ford asked Street what the problem was. Street responded by asking, "Who gave these rangers the authority to ask for my son's driver's license and deer tag?" Agent Ford replied that he had. Street said, "That is your job, not theirs." "I'm going to knock your fucking head in now." Ford said. "You're not going to kick anybody's ass."

Street again walked toward Coe, who had left his truck. When he was about eight feet away, Ford stepped between them. Street said "I'm going to kick all of your asses." Ford drew a can of mace, pointed it at Street, and backed him up against the front of his truck. Street turned to his son and said, "If he sprays me with that mace, I want you to shoot him." Street told his son to get his deer rifle out of the truck. Jason Street immediately did so and returned, placing the gun in a position from which he could immediately pull it up to shoot. Agent Ford drew his weapon. Street ordered his son three more times to shoot Ford if he maced him, saying the third time, "If he sprays me with that mace, I want you to shoot him and kill him."

After a time, Agent Ford persuaded Jason Street to return his weapon to the truck. He asked the rangers to get back in their truck and to leave the lot, which they did. Even after Jason Street returned the gun to the car, Street continued to scream at Bischoff and Coe.

Street was indicted and convicted for two violations of 18 U.S.C. § 111 (1988), which applies to:

> Whoever … forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties. …

The first count of the indictment applied to Coe, and the second to Bischoff. The court sentenced Street to 46 months imprisonment and a $10,000 fine.

## II.

Street contends that the district court should have granted his motion to dismiss either the entire indictment as duplicitous or one count as multiplicitous. The district court correctly refused to dismiss on those grounds.

■ A. "'Duplicity' is the joining in a single count of two or more distinct and separate offenses." *Gerberding v. United States,* 471 F.2d 55, 59 (8th Cir.1973). "The principal vice of a duplicitous indictment is that the jury may convict a defendant with-

out unanimous agreement on the defendant's guilt with respect to a particular offense." *United States v. Karam,* 37 F.3d 1280, 1286 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1113, 130 L.Ed.2d 1077 (1995).

The indictment charged that Street "knowingly did forcefully assault, resist, oppose, impede, intimidate and interfere with" Ranger Coe (Count I) and Ranger Bischoff (Count II), in violation of 18 U.S.C. § 111(a)(1). Street contends that each of the six acts listed in 18 U.S.C. § 111(a)(1)—assaulting, resisting, opposing, impeding, intimidating, or interfering with an officer—is a separate and distinct offense, and that this combination of separate offenses in a single count made the indictment duplicitous. He asserts that this combination of offenses allowed the jury to convict him without necessarily unanimously agreeing that he committed any one of the acts listed.

■ "It is important to distinguish, however, a statute creating several offenses from one … which enumerates several ways of committing the same offense. Where … the statute specifies two or more ways in which one offense may be committed, all may be alleged in the conjunctive in one count of the indictment, and proof of any one of the methods will sustain a conviction." *Gerberding,* 471 F.2d at 59.

■ Section 111(a)(1) defines a single crime, not multiple offenses. The offense is intimidating or threatening by specified acts federal officials engaged in the performance of official duties. The statute lists all of the acts of violation in one sentence, and imposes a single penalty for all of them, "a construction which indicates that Congress did not mean to create more than one offense." *United States v. Mal,* 942 F.2d 682, 688 (9th Cir.1991).

In enacting § 111, Congress intended broadly to prohibit harm or threats thereof to certain federal officials as well as interference with their law enforcement activities. *See United States v. Feola,* 420 U.S. 671, 678–84, 95 S.Ct. 1255, 1260–64, 43 L.Ed.2d 541 (1975). "In order to protect the law enforcement function itself, the statute must be read as prohibiting any acts or threats of

bodily harm that might reasonably deter a federal official from the performance of his or her duties." *United States v. Walker*, 835 F.2d 983, 987 (2nd Cir.1987). Congress created the single crime of harming or threatening a federal official, and specified six ways by which the crime could be committed. The indictment was not duplicitous.

B. "'Multiplicity' is the charging of a single offense in several counts.... 'The vice of multiplicity is that it may lead to multiple sentences for the same offense.'" *United States v. Kazenbach*, 824 F.2d 649, 651 (8th Cir.1987) (quoting 1 Charles A. Wright, Fed. Pract. & Proc. § 142 at 469, 475 (1982)).

Street contends that the indictment is multiplicitous because his confrontation with Rangers Coe and Bischoff was a single event that constituted one assault rather than two. He analogizes his case to *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) and *United States v. Theriault*, 531 F.2d 281 (5th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed.2d 182 (1976). In *Ladner* the Court held an indictment multiplicitous where the defendant was convicted under two counts of assaulting a federal officer by injuring two officers with a single shotgun blast. In *Theriault* the Fifth Circuit held an indictment multiplicitous where the defendant was convicted under two counts of assaulting a federal officer by injuring two officers in a car crash caused by the defendant's single act of striking the steering wheel.

This court rejected an almost identical argument based on *Ladner* and *Theriault* in *United States v. Kazenbach*, 824 F.2d 649 (8th Cir.1987). In *Kazenbach*, the defendant, a federal prison inmate, scuffled with three prison guards. He swung at one, bit the other, scratched the third, and attempted to bite and spit at all three (the inmate had AIDS). *Id.* at 650. Katzenbach was convicted of three counts of assault. He appealed the trial court's denial of his motion to dismiss two of the three counts for multiplicity, "argu[ing] that his struggle with the three guards was a single altercation which constituted a single assault offense instead of three." *Id.* at 651. Thus, he contended, like

the defendants in *Ladner* and *Theriault*, he should have been charged only with a single assault.

We rejected this line of reasoning, finding Katzenbach's case analogous to *United States v. Wesley*, 798 F.2d 1155 (8th Cir.1986) and *United States v. Hodges*, 436 F.2d 676 (10th Cir.), *cert. denied*, 403 U.S. 908, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971). In *Wesley* and *Hodges*, the defendants, while involved in struggles with federal prison guards, struck each of them separately, and were charged and convicted of several violations of 18 U.S.C. § 111. The defendants in both cases contended that they should have each been charged with only one assault, because they were engaged in one continuous course of conduct toward the officers. In each case, the court disagreed, holding that the assaults were separate acts rather than multiple injuries caused by one act, and that the indictment, therefore, was not multiplicitous. As the Tenth Circuit stated in *Hodges:*

> The present case is certainly not an instance of a single blow by Hodges, for example, resulting in an "assault" on five different penal officers. Rather, Hodges gave each one of the five individual attention, and in succession he did forcibly assault and resist each of the five, all of which constitutes five violations of 18 U.S.C. § 111, not one.

*Hodges*, 436 F.2d at 678. Similarly, in *Kazenbach*, the court held that the evidence showed that the defendant had struck each officer separately, and that therefore, the "facts here are more analogous to the facts in *Wesley* and *Hodges*, ... in which the assaults were caused by separate acts, than to the facts in *Ladner* or *Theriault*, ... in which the assaults and injuries were effected by a single act ..." *Kazenbach*, 824 F.2d at 652.

Although Street made several verbal threats directed at both rangers during the altercation, the evidence shows that he assaulted each of them separately and successively. First, he confronted Ranger Coe, standing within inches of him and trapping him in the open door of a truck. He threatened to knock the ranger's head in, and, after angrily berating him with profanity, stepped

back, and then lunged at him warning him to "never look at me like that again, you little fucker."

Upon learning that it was Ranger Bischoff who had asked to see his son's driver's license and deer tag, Street left Coe and walked over to Bischoff and confronted him, warning him "If you do not leave the parking lot now, I am going to knock your fucking head in." He jabbed his finger at Ranger Bischoff's eye and waved his fist in his face. He then directed his son to beat up Coe, saying that he would beat up Bischoff.

The facts in this case are analogous to *Wesley* and *Hodges,* as well as to *Kazenbach,* rather than to *Ladner* and *Theriault.* Street committed two separate violations of 18 U.S.C. § 111(a)(1), and the indictment charging those violations in separate counts was not multiplicitous.

## III.

Street contends that the district court improperly admitted two items of evidence: testimony about the confrontation between Street and Agent Ford, and the written report of Ranger Coe describing the incident.

■■■■ A. The district court admitted the evidence regarding the armed confrontation between Street and Agent Ford pursuant to Federal Rule of Evidence 404(b) "as possible proof of motive, intent, opportunity, preparation, plan, knowledge, identity or absence of mistake or accident." Rule 404(b) provides in pertinent part:

Other crimes, wrongs, or acts. Evidence of other crimes wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or mistake or accident, . . .

"[T]his circuit views Rule 404(b) 'as one of inclusion, permitting admission of other crimes, wrongs, or bad acts material to an issue at trial, unless the evidence tends to prove only the defendant's criminal disposition.' Finally, '[t]he court is vested with broad discretion in determining whether to

admit wrongful act evidence. The trial court's determination will not be disturbed unless the appellant can show that the evidence in question clearly had no bearing upon any of the issues involved.'" *United States v. Callaway,* 938 F.2d 907, 910 (8th Cir.1991) (citations omitted).

■■■■ "As a general rule, evidence of other acts committed by a defendant may be admitted to prove intent or absence of mistake. Intent is a required element of the crime of assaulting or interfering with" a federal officer. *United States v. Shedlock,* 62 F.3d 214, 218 (8th Cir.1995).

■■■■ Street's intent to assault the rangers was a critical contested issue in the case. Street presented evidence at trial, which he also relies on in the appeal, that the incident was "just a lot of mouthing around," that he merely yelled at the rangers and that this evidence shows that "the rangers' safety was not in jeopardy because if Mr. Street were to strike either or both of the rangers, he had ample opportunity and time to do so. Yet, he did not."

The evidence about Street's confrontation with Agent Ford, which followed immediately after his confrontation with Coe and Bischoff, was relevant to the question of Street's intent in his encounters with the federal rangers. *See, e.g., Shedlock* at 218–19 (upholding admission of testimony on later confrontation to show intent during earlier assault on a Deputy U.S. Marshal). The confrontations were similar and in both of them Street by his threats indicated his intent and willingness to use force against the government officers. The district court instructed the jury that it could consider the testimony only as evidence relating to intent. The district court did not abuse its discretion in admitting the evidence of the confrontation between Street and Agent Ford.

B. In his direct testimony Ranger Coe described the many obscenities Street had spoken. On cross examination, Street brought out that in his grand jury testimony Coe had not stated that Street had made obscene statements. Street concluded this line of questioning by asking "And so your feeling today, and your memory today, is

better than when you testified in front of the grand jury two weeks after this incident happened?" Coe replied that, after reviewing a written report he prepared shortly after the incident and before his grand jury testimony, it was better. Street then asked whether Coe had "exaggerated on other statements as well?"

In redirect examination of Coe, the government introduced into evidence Coe's report, which was written shortly after the incident and in which Coe described Street's obscene statements in virtually the same terms that he testified to at trial.

█ Street contends that the report was improperly admitted because it was hearsay that did not come within any of the recognized exceptions to the hearsay rule. The report was properly admitted, however, pursuant to Federal Rule of Evidence 801(d)(1)(B) as a prior consistent statement.

"Federal Rule of Evidence 801(d)(1)(B) provides that an extrajudicial statement is not hearsay if '[t]he declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is ... consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive.'" *United States v. Blankinship,* 784 F.2d 317, 319 (8th Cir.1986). Coe's statement satisfied these requirements. He testified at trial and was subject to cross-examination. The statement was offered to rebut a charge of recent fabrication of testimony and was consistent with Coe's testimony at trial.

## IV.

A. The indictment charged that Street "forcibly" assaulted and threatened the federal officers. Street contends that the evidence did not establish this statutory element of the offense because he never had physical contact with the rangers.

█ "Force is a necessary element of any § 111 conviction. However, that element may be satisfied by proof of actual physical contact, or by proof of 'such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm,

or death.'" *United States v. Schrader,* 10 F.3d 1345, 1348 (8th Cir.1993) (quoting *United States v. Walker,* 835 F.2d 983, 987 (2d Cir.1987)). The evidence must show that "the defendant's behavior would reasonably have inspired fear in a reasonable person." *Walker,* 835 F.2d at 987.

The statute's force requirement therefore may be satisfied even if the defendant has no physical contact with the officer, as long as his conduct places the officer in fear for his life or safety. In *Shedlock,* the defendant "did not touch [the officer] at any time," but the force requirement was satisfied by the defendant's violently pounding the officer's car door and by advancing toward him in an extremely agitated manner. *Shedlock,* at 216–17, 219–20. Similarly, in *Walker,* the defendant had no physical contact with the officer, but the force requirement was satisfied because the defendant made verbal threats and hand gestures simulating the use of a gun, and removed his jacket as if preparing to fight. *Walker,* 835 F.2d at 985, 988.

█ Viewing the evidence in the light most favorable to the government and crediting all reasonable inferences therefrom, the jury could have concluded beyond a reasonable doubt, *see Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), that Street made threats and manifested physical aggression toward each officer that would reasonably inspire fear of pain, bodily harm, or death in each. From the moment the confrontation began, Street behaved in an extremely agitated manner, yelling obscenities and swinging his fists. He behaved this way throughout the confrontation with both rangers, "hopping mad," "jumping up and down," with arms raised.

He made numerous threats, laced with obscenities, to harm one or both of the rangers physically. He confronted each of the rangers face to face and berated and threatened them. He trapped Ranger Coe in the open door of his truck and lunged at him. He then confronted Ranger Bischoff and thrust his fists within inches of his face and his finger within an inch of his eye. He also directed his son to beat up Ranger Coe while

repeating his intention to attack Ranger Bischoff.

B. Street also contends that the evidence does not show that his assaults of the park rangers occurred while they were "engaged in or on account of the performance of official duties," because rangers are not authorized to enforce state game laws or to detain or arrest.

■■■■ " 'Engaged in ... performance of official duties' is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own." *United States v. Heliczer*, 373 F.2d 241, 245 (2d Cir.), *cert. denied*, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967). The "scope of what the agent is employed to do" is not defined by "whether the officer is abiding by laws and regulations in effect at the time of the incident," *United States v. Jennings*, 991 F.2d 725, 732 (11th Cir.1993), nor is the touchstone whether the officer is performing a function covered by his job description, *United States v. Green*, 927 F.2d 1005, 1007 (7th Cir.), *cert. denied*, 502 U.S. 847, 112 S.Ct. 147, 116 L.Ed.2d 112 (1991) ("cases interpreting ... § 111 ... do not support ... occupational pigeonholing"). The courts have "opt[ed] instead for an interpretation of this phrase that is broad enough to fulfill Congress's goals of protecting federal officers and facilitating the accomplishment of federal functions." *Id.* at 1007. They look to whether the officer's actions fall within the agency's overall mission, *see, e.g., Green*, 927 F.2d at 1007–08 (prison food service workers' attempt to maintain order, safety, and discipline within scope of duties), or are " 'what an officer ought to do because of being an officer,' " *United States v. Lopez*, 710 F.2d 1071, 1074 (5th Cir.1983) (federal officer detaining state fugitive acting within scope of his duties).

■■■■ The evidence supports the jury's conclusion that the rangers were engaged in the performance of official duties when Street assaulted them. Although the rangers were not authorized to enforce state game laws or to detain or arrest suspects, their duties included assisting other law enforcement officials and checking identifica-

tion. *See* 36 C.F.R. § 327. The Corps has entered into cooperative agreements with the Missouri Department of Conservation to maintain. and manage certain areas. The rangers were on deer patrol and were assisting a state conservation agent's investigation of possible state game law violations when they asked Street's son to show his driver's license and deer tag—the act that triggered Street's assault of them.

Street's assault took place while the rangers were engaged in or on account of the performance of official duties.

## V.

In determining Street's sentence, the district court ruled that the offense was aggravated assault under § 2A2.2 of the Sentencing Guidelines, resulting in an offense level of 15. The court increased this by 3 levels because a firearm was used (U.S.S.G. § 2A2.2(b)(2)(C)), by 3 levels because the victim was a government officer or employee (U.S.S.G. § 3A1.2(a)), and by 2 levels because there were two victims (U.S.S.G. § 3D1.4). This produced an offense level of 23, with a guideline range of 46 to 57 months imprisonment. The district court sentenced Street to 46 months imprisonment and fined him $10,000.

A. Street contends that the district court improperly classified his offense as aggravated assault under U.S.S.G. § 2A2.2, and should have classified it as Obstructing or Impeding Officers under U.S.S.G. § 2A2.4 or as a Minor Assault under § 2A2.3.

■■■ Guideline § 1B1.2(a) requires that a court first "determine the offense guideline section ... most applicable to the offense of conviction." The two possible guideline sections for a violation of 18 U.S.C. § 111(a) are U.S.S.G. § 2A2.2 (Aggravated Assault) and § 2A2.4 (Obstructing or Impeding Officers). U.S.S.G. App. A; *United States v. Jennings*, 991 F.2d 725, 733 (11th Cir.1993). Section 2A2.2 applies if the offense of conviction was "a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm (*i.e.* not merely to frighten), or (b) serious bodily injury, or (c) an intent to commit

another felony." U.S.S.G. § 2A2.2 n. 1. Section 2A2.4 applies if the violation of 18 U.S.C. § 111 involves none of the three bases for aggravated assault. *Jennings,* 991 F.2d at 733.

█ Under § 1B1.2(a) the court determines which guideline is most applicable to the "offense of conviction." Thus, it selects the guideline solely by "conduct charged in the count of the indictment or information of which the defendant was convicted." *Id.* The confrontations with Rangers Coe and Bischoff did not involve any of the three bases for aggravated assault. Therefore, the applicable guideline is § 2A2.4 (Obstructing or Impeding Officers).

Section 2A2.4 contains a "cross-reference" which states:

[I]f the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault).

The question is whether the "conduct" to which this cross-reference refers is limited to the offense of conviction or, more broadly covers all the "underlying conduct" that the court may consider in determining the sentence.

Guideline § 1B1.3(a)(1) provides that "[u]nless otherwise specified ... cross-references in Chapter Two ... shall be determined on the basis of ... all acts ... committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

Prior to November 1, 1992, the "cross-reference" in § 2A2.4 stated:

[I]f the defendant is convicted under 18 U.S.C. § 111 and the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault).

In *Jennings,* the court held that under this earlier version of the guideline, § 2A2.2 could not be applied through the cross-reference to permit a sentence for aggravated assault where the aggravated conduct was not part of the offense of conviction, because the reference to conduct under 18 U.S.C. § 111

subjected the cross-reference to the " 'unless otherwise specified' exception, and a court cannot consider relevant conduct in deciding whether to apply it." 991 F.2d at 734.

In amending § 2A2.4(c)(1) by deleting "defendant is convicted under 18 U.S.C. § 111 and the," the Sentencing Commission stated that the amendment "provides for their [these specified offense characteristics] on the basis of the underlying conduct." Guidelines amendment 443.

█ Thus, in determining the applicability under the present § 2A2.4(c)(1) of § 2A2.2, the district court is not limited to considering the conduct of the offense of conviction, but also may consider the defendants "underlying conduct" or, as some courts state, the "relevant" conduct. *Jennings,* 991 F.2d at 733–734. As explained above, that is a much broader category. " '[R]elevant conduct' is the conduct that is 'part of the instant offense.' ... To make the factual determination whether the conduct is part of the instant offense, 'the district court considers several factors, including temporal and geographical proximity, common victims, and a common criminal plan or intent.' " *United States v. Torres–Diaz,* 60 F.3d 445 (8th Cir.1995) (quoting *United States v. Blumberg,* 961 F.2d 787, 792 (8th Cir.1992)).

█ The district court did not err in finding that Street's conduct toward Agent Ford was "part of the instant offense." The incidents between Street and the rangers and between Street and Ford were intertwined. Agent Ford arrived as the rangers were backing out of the parking lot. The rangers then stayed for the confrontation with Agent Ford, which to some extent also involved them. Ranger Coe testified that Street was moving toward him again when Agent Ford intervened, which began the confrontation involving the gun. Street continued to threaten to beat all of them up. The confrontations were similar and both resulted from Street's hostility toward the Corps and anger about the ranger's actions.

B. Street next contends that his confrontation with Agent Ford did not constitute aggravated assault. We " 'accept the find-

ings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.'" *United States v. Parker*, 989 F.2d 948, 951 (8th Cir.) (quoting 18 U.S.C. § 3742(e)), *cert. denied,* —— U.S. ——, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993). The court found that Street committed aggravated assault because his confrontation with Agent Ford involved "a dangerous weapon with intent to do bodily harm." Although Street asserts that he only meant to scare Agent Ford, the district court was not required to accept this assertion. *United States v. Park,* 988 F.2d 107, 110 (11th Cir.) *cert. denied,* —— U.S. ——, 114 S.Ct. 226, 126 L.Ed.2d 182 (1993).

■■ The district court's finding that Street intended to do bodily harm is not clearly erroneous. Street directed his son three times to shoot Agent Ford if Ford used his mace, saying the third time, "Kill him." Street had been extremely agitated and had threatened to inflict various kinds of bodily harm upon the rangers and upon Agent Ford. Agent Ford believed himself sufficiently threatened to take out his can of mace and then to draw his weapon.

C. As developed at oral argument, Street also contends that the district court's consideration in sentencing of his conduct toward Agent Ford subjected him to double jeopardy because the state already had prosecuted him for that conduct. The recent decision of the Supreme Court in *Witte v. United States,* —— U.S. ——, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), refutes that contention.

In *Witte,* the defendant pleaded guilty to possessing marijuana with intent to distribute. In calculating Witte's offense level under the guidelines, the district court considered not only the amount of marijuana involved in the charged offense, but also an additional 1000 pounds of marijuana and 1091 kilograms of cocaine involved in uncharged criminal conduct in which he had engaged with co-conspirators. *Id.* at ——, 115 S.Ct. at 2203. Witte was later indicted for conspiring and attempting to import the 1091 kilograms of cocaine considered in the earlier sentencing. *Id.* at ——, 115 S.Ct. at 2203–04. The Supreme Court rejected Witte's

contention that his subsequent prosecution on the cocaine offense would subject him to double jeopardy because the district court had considered that conduct in sentencing him on the marijuana charge.

The Court pointed out that "the uncharged criminal conduct was used to enhance petitioner's sentence within the range authorized by statute," and stated that it was "impossible to conclude that taking account of petitioner's plans to import cocaine in fixing the sentence for the marijuana conviction constituted 'punishment' for cocaine offenses." —— U.S. at ——, 115 S.Ct. at 2206. The Court ruled that the application of the Sentencing Guidelines did not "change the constitutional analysis. A defendant has not been 'punished' any more for double jeopardy purposes when relevant conduct is included in the calculation of his offense level under the Guidelines than when a pre-Guidelines court, in its discretion took similar uncharged conduct into account." *Id.* at ——, 115 S.Ct. at 2207. The Court held:

> where the legislature has authorized such a particular punishment range for a given crime, the resulting sentence within that range constitutes punishment only for the offense of conviction for purposes of the double jeopardy inquiry. Accordingly, the instant prosecution for the cocaine offenses is not barred by the Double Jeopardy Clause as a second attempt to punish petitioner for the same crime.

*Id.* at ——, 115 S.Ct. at 2208.

■■ *Witte* fully answers Street's argument. The fact that the state previously had punished Street for his actions against Agent Ford did not preclude the district court from considering that conduct in sentencing Street for his crimes against the park rangers, since such consideration was not punishment for double jeopardy purposes. It is immaterial that in this case, unlike *Witte,* the prosecution occurred before the same conduct was considered for sentencing purposes. As *Witte* explained, "it makes no difference in this context whether the enhancement occurred in the first or second sentencing proceeding." *Id.* at ——, 115 S.Ct. at 2206. It is equally immaterial that the first prosecu-

tion and sentencing here was state, not federal.

## CONCLUSION

The conviction and sentence are affirmed.