# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3529
_____

United States of America

*Plaintiff - Appellee*

v.

Jeremy Crow

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Western
_____

Submitted: October 24, 2025
Filed: December 19, 2025
[Unpublished]
_____

Before SMITH, KELLY, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Jeremy Crow was charged with five counts of assaulting a federal officer, in violation of 18 U.S.C. § 111(a)(1). Each count concerned a different federal officer. At the close of the government's case, Crow moved for judgment of acquittal, arguing that Count V was multiplicitous because his contact with the victim in Count V arose from his assault of the other two federal officers in Counts III and IV. The

district court[1] denied the motion, concluding that sufficient evidence existed from which the jury could determine that Crow took separate actions against each victim in Counts III, IV, and V. The jury convicted Crow on all counts, and the district court sentenced him to 77 months' imprisonment on each count, all to run concurrently. Crow appeals, renewing his argument that Count V is multiplicitous. We affirm.

## I. *Background*

Jeremy Crow assaulted Oglala Sioux Tribe Department of Public Safety (OSTDPS) Officers Tanner Hicks and Nina Martinez while they were arresting him. Crow was booked into the Pine Ridge Justice Center.

Two days later, OSTDPS Officer Kenneth Stands, along with OSTDPS Officer Dale Two Eagle, offered Crow a meal, which Crow indicated that he would accept. When Officer Stands opened Crow's cell door, Crow "thrust himself through the small crease that was open." R. Doc. 94, at 129. In response, Officers Stands and Two Eagle "opened the door to try to grab [Crow] and try to place him back in the cell, but he was uncooperative." *Id.* The officers "struggled to get control of him"; they attempted to grab Crow's arms but were unable to "because his skin was real greasy/sweating feeling." *Id.* at 130. Officer Stands told Crow "to stop resisting," but Crow did not comply. *Id.* Crow bit Officer Stands on his right hand.

According to Officer Two Eagle, he instructed Crow "to stop moving, to stop thrashing" during the altercation. *Id.* at 149. While Crow was "moving and thrashing," he "ma[d]e physical contact" with Officer Two Eagle. *Id.* Specifically, Crow "applied his forearm to [Officer Two Eagle's] chest and [his] arm." *Id.* at 155.[2]

---

[1]The Honorable Camela C. Theeler, United States District Judge for the District of South Dakota.

[2]During trial, on redirect, Officer Two Eagle confirmed this physical contact after previously agreeing with defense counsel on cross-examination that Crow "did not assault" him. *Id.* at 153.

A video[3] of the altercation published to the jury shows Crow grab and pull Officer Two Eagle's collar, push away from Officer Two Eagle, and press his forearm against Officer Two Eagle's arm and chest. Once Crow was on the ground, he kicked Officer Two Eagle in the shin. When being put back into his cell, Crow again kicked Officer Two Eagle, who grabbed Crow by the legs.

OSTDPS Officer Patrick Beard heard movement and saw Officers Stands and Two Eagle trying to restrain Crow, who was noncompliant. Officer Beard tried to assist the officers in returning Crow to his cell. In response, Crow bit Officer Beard's knuckle.

A federal grand jury returned a five-count indictment, charging Crow with assaulting five separate federal officers, in violation of 18 U.S.C. § 111(a)(1). The victims in Counts I and II were arresting Officers Hicks and Martinez, respectively. The victims in Counts III through V were Officers Stands, Beard, and Two Eagle, respectively. The case proceeded to a jury trial. At the close of the government's case, Crow moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. Relevant to the present appeal, Crow argued that Count V was multiplicitous because his "act of resistance was a single act . . . that Officer Two Eagle joined in." R. Doc. 94, at 157. The district court denied the motion. It concluded that sufficient evidence existed from which the jury could find Crow took "separate actions . . . against three separate officers in Counts III, IV, and V." *Id.* at 168.

Thereafter, Crow testified in his defense that he rushed out of the cell door to get help because he needed medical attention. He stated that he did not intentionally use force against the correctional officers and denied ever making physical contact with Officer Two Eagle. He denied being combative and biting Officers Stands and Beard.

---

[3]*See id.* at 83 (admitting Exhibit 3).

The jury convicted Crow on all counts. The district court sentenced Crow to 77-months' imprisonment, all to run concurrently.

## II. *Discussion*

On appeal, Crow argues that the district court erred in denying his motion for judgment of acquittal because Count V (Officer Two Eagle) is multiplicitous with Counts III and IV (Officers Stands and Beard). According to Crow, "[a]lthough the acts of resistance [that Crow] committed against Officer Stands and Officer Beard also had an impact on [Officer] Two Eagle, each was a single act and could constitute only one conviction each under the rationale set forth in *Ladner v. United States*, 358 U.S. 169 [(1958)]." Appellant's Br. at 2–3.

"In reviewing a district court's grant of a motion for a judgment of acquittal, this court reviews the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Johnson*, 639 F.3d 433, 437 (8th Cir. 2011) (citation modified).

Crow was convicted for multiple violations of § 111(a)(1). Section 111(a)(1) applies to "[w]hoever . . . forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties." It "defines a single crime, not multiple offenses. The offense is intimidating or threatening by specified acts federal officials engaged in the performance of official duties." *United States v. Street*, 66 F.3d 969, 974 (8th Cir. 1995). In sum, § 111(a)(1) defines a "single crime of harming or threatening a federal official, and specifie[s] six ways by which the crime [can] be committed." *Id.* at 975.

"'Multiplicity' is the charging of a single offense in several counts . . . . 'The vice of multiplicity is that it may lead to multiple sentences for the same offense.'" *Id.* (ellipsis in original) (quoting *United States v. Kazenbach*, 824 F.2d 649, 651 (8th Cir. 1987) (quoting 1 Charles A. Wright, Fed. Pract. & Proc. § 142 at 469, 475

(1982))). One "way of evaluating [multiplicity] is [to ask] whether there is more than one act causing injury, not whether more than one officer is injured by the same act." *United States v. Wesley*, 798 F.2d 1155, 1156–57 (8th Cir. 1986).

Here, Crow contends that Count V is multiplicitous with Counts III and IV under *Ladner*. "In *Ladner* the Court held an indictment multiplicitous where the defendant was convicted under two counts of assaulting a federal officer by injuring two officers with a single shotgun blast." *Street*, 66 F.3d at 975 (citing *Ladner*, 358 U.S. 169 (analyzing 18 U.S.C. § 254, the predecessor statute to § 111)). Crow also analogizes his case to *United States v. Theriault*, 531 F.2d 281 (5th Cir. 1976), in which "the Fifth Circuit held an indictment multiplicitous where the defendant was convicted under two counts of assaulting a federal officer by injuring two officers in a car crash caused by the defendant's single act of striking the steering wheel," *Street*, 66 F.3d at 975 (citing *Theriault*, 531 F.2d 281).

We have distinguished *Ladner* and *Theriault* from § 111 cases involving "assaults [that] were caused by separate acts." *Id.* (citation modified) (holding indictment charging the defendant with two violations of § 111 was not multiplicitous because the evidence showed that the defendant initially confronted a park ranger by standing within inches of him and threatening to bash the ranger's head in, and then left the first ranger and walked over to a second ranger, jabbing his finger at the ranger's eye and waving his fist in his face stating that he would also bash his head in); *see also Kazenbach*, 824 F.2d at 652 (holding indictment was not multiplicitous because the evidence showed that the defendant "first struck at Officer Burton while still in his cell, and later bit Officer Siemiatkowski and scratched Officer Small during the officers' attempt to restrain [the defendant] to the bed in the lock-down room"); *Wesley*, 798 F.2d at 1156–57 (rejecting the defendant's argument "that his struggle with . . . guards constituted only one assault instead of two" based on evidence that the defendant "struck the first guard in the groin and moments later the second was injured on the corner of the bed"); *United States v. Hodges*, 436 F.2d 676, 678 (10th Cir. 1971) (cited with approval in *Wesley* and *Kazenbach*) (holding the defendant was properly charged with five counts of assault

under § 111 when the defendant, who had been involved in a prison altercation that guards broke up, first kicked one guard in the ribs, next kicked a second guard in the back of the head, then hit a third guard in the chest, and finally hit two more guards on his way to the cell house).

"The facts in this case are analogous to *Wesley* and *Hodges*, as well as to *Kazenbach* [and *Street*], rather than to *Ladner* and *Theriault*." *Street*, 66 F.3d at 976. The evidence shows that Crow assaulted each officer "separately and successively." *Id.* at 975. First, Crow bit Officer Stands on his right hand during the officers' struggle to return Crow to his cell. Second, Crow grabbed and pulled Officer Two Eagle's collar, pushed away from Officer Two Eagle, and pressed his forearm against Officer Two Eagle's arm and chest. He also kicked Officer Two Eagle's shin. Third, Crow bit Officer Beard's knuckle when Officer Beard tried to assist the other officers in returning Crow to his cell. Given the nature and timing of the officers' injuries, "it follows that the assaults had to be effected by separate acts." *Wesley*, 798 F.2d at 1157. The district court did not err by denying Crow's motion for judgment of acquittal based on multiplicity.[4]

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

[4]Crow further argues that under the "impulse test" applied in cases involving the simple assault statute, 18 U.S.C. § 113(a), he acted with a single impulse during his assaults on the officers. *See United States v. Chipps*, 410 F.3d 438, 449 (8th Cir. 2005) ("Under the impulse test, we treat as one offense all violations that arise from that singleness of thought, purpose or action, which may be deemed a single impulse." (citation modified)). *Chipps* is distinguishable. In that case, we applied the rule of lenity to § 113(a) because Congress failed to "specif[y] the unit of prosecution for simple assault with clarity" and interpreted § 113(a) "to be a course-of-conduct offense" requiring application of the impulse test. *Id.* Applying this test, we "discern[ed] a single impulse underlying [the defendant's] assaultive conduct," *id.*, when "no more than a few seconds elapsed between . . . two instances of assaultive conduct" on the same victim, *id.* at 447. The present case involves neither § 113(a) nor multiple assaults on the same victim.